IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of AREA ERECTORS, INC., an Illinois corporation, | ) ) ) | **JURY DEMAND** |
| | ) | |
| Plaintiff, | ) | Case No.: _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| CADDELL CONSTRUCTION CO., INC., an Alabama corporation; LENEX STEEL COMPANY, an Indiana corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, UNITED STATES OF AMERICA, for the use and benefit of AREA ERECTORS,

INC. ("Area"), by its attorneys, Reno & Zahm LLP, as and for its Complaint, states and alleges as

follows:

### JURISDICTION AND VENUE

1.     This action is brought pursuant to the Miller Act, 40 U.S.C. §3131, *et seq*. This Court

has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2.     Venue is proper in the Northern District of Illinois under 40 U.S.C. §3133(b)(3),

because the Sub-subcontract, as that term is defined herein, was to be performed in Winnebago

1

County, Illinois.

3.      This Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. §1367, because they are so related to Plaintiff's Miller Act claims that they form part of the same case or controversy.

## GENERAL ALLEGATIONS

4.      Area is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Illinois.

5.      Area is engaged in the business of providing steel, precast, and pre-engineered erection services used in the construction of commercial and public buildings.

6.      Defendant, Caddell Construction Co., Inc. ("Caddell"), is a corporation organized and existing under the laws of the State of Alabama.

7.      Caddell is engaged in the business of constructing federal buildings through various Departments of the United States Government, including the U.S. General Services Administration ("G.S.A.").

8.      Defendant, Lenex Steel Company ("Lenex"), is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in the State of Indiana.

9.      Lenex is engaged in the business fabricating and erecting structural steel framework for commercial and public buildings.

10.      Defendant, Travelers Casualty and Surety Company of America ("Travelers"), is a corporation organized and existing under the laws of the State of Connecticut.

11.      Defendant, Fidelity and Deposit Company of Maryland ("Fidelity"), is a corporation organized and existing under the laws of the State of Maryland.

12.      Defendant, Zurich American Insurance Company ("Zurich"), is a corporation

2

organized and existing under the laws of the State of New York.

13.     Defendants, Travelers, Fidelity, and Zurich, are each engaged in the business of, among other things, providing payment bonds for the construction of public works projects.

14.     Caddell, as general contractor, entered into contract number GS-05P-02-GBC-0089, with the United States of America through the G.S.A. (the "Prime Contract").  Area does not have a copy of the Prime Contract in its possession or control.

15.     The Prime Contract required Caddell to construct a new U.S. Courthouse in Rockford, Illinois (the "Project").

16.     On or about May 9, 2008, Defendant Caddell, as principal, together with Defendants Travelers, Fidelity, and Zurich, as sureties, duly executed and delivered to the United States of America a payment bond in the amount of $82,220,897.00 for the protection of all persons supplying labor and material in the execution of the work provided for in the Prime Contract (the "Payment Bond").  A copy of the Payment Bond is attached hereto and made a part hereof as Exhibit "A".

17.     On or about June 6, 2008, Caddell entered into a written Subcontract with Lenex to perform certain obligations of Caddell under the Prime Contract (the "Subcontract").  Area does not have a copy of the Subcontract in its possession or control.

18.     On or about June 16, 2008, Lenex entered into a written contract with Area to perform certain obligations of Lenex under the Subcontract (the "Sub-subcontract").  A true and correct copy of the Sub-subcontract is attached hereto and made a part hereof as Exhibit "B".

19.     Pursuant to the Sub-subcontract, Area agreed to perform all steel erection for the construction of the Project, including the furnishing of all labor, tools, equipment, supervision, insurance, and taxes required for the completion of the Project, as well as work necessary to

accomplish the results intended by the Sub-subcontract.

20.     Area performed all of its obligations under its Sub-subcontract with Lenex.

21.     In performing its obligations, Area's performance satisfied some or all of Lenex's obligations to Caddell under the Subcontract, and some of Caddell's obligations to the G.S.A. under the Prime Contract.

22.     By performing all obligations required of it under the Sub-subcontract with Lenex, Area is entitled to full payment under the Sub-subcontract.

23.     Under the Sub-subcontract, there is currently due and owing to Area the sum of approximately $400,000.00.

24.     Lenex has failed and refused to pay Area the amount due and owing.

**COUNT I**
**Miller Act, 40 U.S.C. §3131, *et seq.***
**Travelers, Fidelity, and Zurich**

For Count I of the Complaint, Use Plaintiff, AREA ERECTORS, INC., alleges against Defendants, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY, as follows:

1.-24.   Area repeats and re-alleges the allegations of paragraphs 1 through 3 of Jurisdiction and paragraphs 4 through 24 of General Allegations as and for the allegations of paragraphs 1 through 24 of Count I as if herein set forth in full.

25.     For purposes of the Miller Act, 40 U.S.C. §3131, *et seq.*, Caddell was a contractor furnishing a payment bond for the Project.

26.     A notice of Area's claim on the Payment Bond pursuant to 40 U.S.C. § 3133(b)(2)

4

was served upon Caddell on December 9, 2010. A copy of the notice and the Affidavit of the Special Process Server is attached hereto and made a part hereof as Exhibit "C".

27.     More than 90 days have elapsed since Area performed the last of the labor or furnished or supplied the last of the material pursuant to the Sub-subcontract.

28.     Under the terms of the Payment Bond and the Miller Act, 40 U.S.C. §3131, *et seq.*, Travelers, Fidelity, and Zurich are jointly and severally obligated to pay Area the principal amount due and owing.

WHEREFORE, Plaintiff, UNITED STATES OF AMERICA for use and benefit of AREA ERECTORS, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, TRAVELERS CASUALTY AND INSURANCE COMPANY OF AMERICA, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and ZURICH AMERICAN INSURANCE COMPANY, jointly and severally, as follows:

A.      In an amount to be determined at trial, which Plaintiff believes is approximately $400,000.00; and

B.      For such other and further relief as is appropriate.

## COUNT II
### (Breach of Contract)
### LENEX STEEL COMPANY

For Count II of the Complaint, Use Plaintiff, AREA ERECTORS, INC., alleges against Defendant, LENEX STEEL COMPANY, as follows:

1-24.   Area repeats and realleges the allegations of paragraphs 1 through 3 of Jurisdiction and paragraphs 4 through 24 of General Allegations of this Complaint as the allegations of paragraphs 1 through 24 of Count II as if herein set forth in full.

5

25.     Lenex breached the Sub-subcontract by failing to pay Area the amounts Area is owed under the Sub-subcontract.

26.     Due to Lenex's breach of the Sub-subcontract, Area has been damaged in an amount of approximately $400,000.00.

WHEREFORE, Plaintiff, UNITED STATES OF AMERICA for use and benefit of AREA ERECTORS, INC., respectfully requests that this Court enter judgment in its favor and against Defendant, LENEX STEEL COMPANY, as follows:

A.     In an amount to be determined at trial, which Plaintiff believes is approximately $400,00.00; and

B.     For such other and further relief as is appropriate.


## PLAINTIFF DEMANDS TRIAL BY JURY


Dated this 16th day of September, 2011.


                                        Plaintiff, UNITED STATES OF AMERICA
                                        for use and benefit of AREA ERECTORS,
                                        INC., by its attorneys, Reno & Zahm LLP

RENO & ZAHM LLP
By: Craig P. Thomas, Esq. (#06202015)        By:     /s/Jeffrey H. Powell
    Jeffrey H. Powell, Esq. (#06297445)              Jeffrey H. Powell, Esq.
    Scott A. Calkins, Esq. (#06285423)
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph.  (815) 987-4050
Fax (815) 987-4092

| **PAYMENT BOND**<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>May 13, 2008 | OMB No.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | |
|---|---|---|---|
| Caddell Construction Co., Inc.<br>2700 Lagoon Park Drive<br>Montgomery, Alabama 36109 | ☐ INDIVIDUAL | | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | | ☒ CORPORATION |
| | STATE OF INCORPORATION<br>Alabama | | |

| SURETY(IES) *(Name(s) and business address(es)* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Travelers Casualty and Surety Company of America | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| One Tower Square, Hartford, CT 06183-6014; | 82 | 220 | 897 | 00 |
| Fidelity and Deposit Company of Maryland | CONTRACT DATE | CONTRACT NO. | | |
| 1400 American Lane, Tower I, 19th Floor, Schaumburg, IL 60196-1056; and | | | | |
| Zurich American Insurance Company | | | | |
| 1400 American Lane, Tower I, 19th Floor, Schaumburg, IL 60196-1056 | May 9, 2008 | GS-05P-02-GBC-0089 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| **PRINCIPAL** | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *Monte McKinney* (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Monte McKinney<br>Senior Vice President, Operations | 2. | 3. | |

| **INDIVIDUAL SURETY(IES)** | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

| **CORPORATE SURETY(IES)** | | | | |
|---|---|---|---|---|
| **SURETY A** | NAME & ADDRESS | Travelers Casualty and Surety Company of America<br>Hartford, CT 06183-6014 | STATE OF INC.<br>Connecticut | LIABILITY LIMIT<br>$ 41,110,448.50 | Corporate Seal |
| | SIGNATURE(S) | 1. *[signature]* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Thomas J. Gentile<br>Attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD
Prescribed by GSA

EXHIBIT
A

| CORPORATE SURETY(IES) *(Continued)* | | | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | Fidelity & Deposit Company of Maryland Schaumburg, IL | STATE OF INC. Maryland | LIABILITY LIMIT $  17,152,000.00 | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | Thomas J. Gentile Attorney-in-fact | 2. | | |
| **SURETY C** | NAME & ADDRESS | Zurich American Insurance Company Schaumburg, IL | STATE OF INC. New York | LIABILITY LIMIT $  23,958,448.50 | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | Thomas J. Gentile Attorney-in-fact | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space

designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

## AGREEMENT BETWEEN
## LENEX STEEL COMPANY AND ERECTOR

AGREEMENT made this **16th** day of **June**, 2008, between Lenex Steel Company, Inc. ("Lenex") and the "Erector":

|  |  |
|---|---|
|  | **Area Erectors, Inc.**<br>**2323 Harrison Avenue**<br>**Rockford, IL 61104** |
| for the following "Project": | **New United States Courthouse**<br>**Rockford, IL**<br>**Lenex Job # 462-08**<br>**Lenex PO # 2860** |
| the "Contractor": | **Caddell Construction Co. Inc.**<br>**P.O. Box 210099 (36121)**<br>**2700 Lagoon Park Drive**<br>**Montgomery, AL 36109** |
| the "Architect": | **Koetter Kim & Associates Inc.**<br>**356 Boylston Street**<br>**Boston, MA 02116**<br><br>**PSA-Dewberry Inc.**<br>**Architecture/Interiors/Engineering/Program Management**<br>**401 Southwest Water Street, Suite 701**<br>**Peoria, IL 61602-1530** |
| the "Owner": | **United States Government** |

Lenex and the Erector agree as set forth below:





## ARTICLE I
## SUBCONTRACT DOCUMENTS

1.1     Definitions.     The "Subcontract Documents," except for Modifications issued subsequent to the execution of this Agreement, consist of the following documents:

      1.1.1     This Agreement, including any exhibits attached hereto.

      1.1.2     The Plans/Drawings identified in Exhibit A, attached hereto and made a part hereof, and Shop Drawings prepared by or on behalf of Lenex.

      1.1.3     The Prime Contract between the Contractor and Lenex including all documents incorporated therein by reference.

      1.1.4     The Project Specifications/Manual

      1.1.5     **The Project Schedule outlined in the bid documents**

      1.1.6     The Erector's Safety Program and all other safety requirements included in the Bidding Documents and by Federal Law.

      1.1.7     The Addenda: **1 and 2 included in the bid documents**

      1.1.8     Other: **N/A**

      **1.1.9     Area Erectors proposal dated 3/26/08/3/27/08**

1.2     Examination.     The Subcontract Documents are available for examination by the Erector at Lenex's office during regular business hours.  By executing this Agreement, the Erector represents that it has fully examined the Subcontract Documents and has executed this Agreement with full knowledge and understanding of the contents of the Subcontract Documents.

1.3     Erector Investigation.     The Erector represents that it has investigated the nature, locality, and site of the Work and the conditions and difficulties under which the Work is to be performed, and enters into this Agreement on the basis of its own investigation and evaluation and not in reliance upon any opinions or representations of Lenex, the Owner, or the Architect.

1.4     Flow-Down Clause.     The Erector shall be bound to Lenex by the terms of the Subcontract Documents and assumes toward Lenex all of the obligations and responsibilities which Lenex, by the Prime Contract, assumes toward the Contractor or Owner.  The Subcontract Documents shall confer no benefit, right, or remedy, either intended or incidental, upon the Erector to make claims or demands against the Contractor or Owner.

1.5     Intent of the Subcontract Documents.     The intent of the Subcontract Documents is to include all items necessary for the proper execution and completion of the Work.  The Subcontract Documents are complementary, and what is required by any one shall be as binding as if required by all.  Work not covered in the Subcontract Documents will not be required unless it is necessary to produce the intended results.

1.6     Inconsistencies or Conflicts.     The Erector shall promptly call to the attention of Lenex any discrepancy or conflict in the Subcontract Documents which affects its Work.  In the event of conflicts or discrepancies between and among the Subcontract Documents, Lenex shall determine which takes precedence.  However, large scale drawings shall take precedence over small scale drawings, and drawings of a later date shall take precedence over those of an earlier date.  In the event of an inconsistency or conflict between the Drawings and Specifications, or within either document, the better quality or greater quantity of Work shall be provided in accordance with Lenex's decision.

1.7    Entire Agreement.  The Subcontract Documents represent the entire and integrated agreement between Lenex and the Erector and supersede all prior negotiations, representations or agreements, whether written or verbal.

1.8    Applicable Law.  This Agreement shall be governed by the laws of the state in which the Project is located.

## ARTICLE 2
## THE WORK

2.1    Scope.  The Erector shall perform all of the Work required by the Subcontract Documents for the steel erection for the construction of the Project in accordance with the Subcontract Documents.  The "Work" shall include the furnishing of all labor, tools, equipment, supervision, insurance, and taxes required for the completion of the Work as required by the Subcontract Documents, or necessary to accomplish the results intended, and shall include the unloading and erection of the following:

- All structural work as identified in the contract documents to include but not be limited to beams, columns, trusses, purlins, girders, screenwall, joists, bridging, braces, angles, and any other structural steel work as shown on the bid documents
- Floor deck and all related materials including studs, column closure, and pour stop (bent plate pour stop to be shop applied)
- All temporary elements for safe construction as outlined by the erector's means and methods, local and governmental authorities, and the project terms and conditions outlined by the general contractor
- **Installation of Window washing anchorages, (2) satellite dish frames, horizontal and vertical steel channels at doors and roof, and tubes for canopy A546/Section 6 included.**

The Work shall be performed in strict compliance with the AISC Code of Standard Practice, the Steel Joist Institute (SJI) Specifications, the Steel Deck Institute (SDI) Code of Recommended Practices and the Subcontract Documents,  and shall include but not be limited to structural metals as follows:

- All structural work as identified in the contract documents to include but not be limited to beams, columns, trusses, purlins, girders, screenwall, joists, bridging, braces, angles and any other structural steel work as shown on the bid documents
- Deck and all related materials including studs, column closure, and pour stop (bent plate pour stop to be shop applied)
- All temporary elements for safe construction as outlined by the erector's means and methods and local and governmental authorities, and the project terms and conditions outlined by the general contractor
- **Installation of Window washing anchorages, (2) satellite dish frames, horizontal and vertical steel channels at doors and roof, and tubes for canopy A546/Section 6 included.**

2.2    Supervision and Coordination.  The Erector shall supervise and direct its Work using the Erector's best skill and attention **and as outlined in the erector's proposal.**  The Erector shall act as Lenex's field representative on the Project, and shall attend all progress meetings, but shall limit its acts to conform to the terms of this Agreement.  The Erector shall be solely responsible for its construction means, methods, techniques, sequences and procedures, and shall coordinate all portions of its Work under the Subcontract Documents, subject to the overall coordination of Lenex.  The Erector shall establish and maintain a quality control program as outlined in AISC Code of Standard Practice (most recent edition of Manual of Steel Construction - LRFD).

2.3    Erector's Employees.  The Erector shall be fully responsible for its employees and laborers and shall remove from the Project any persons Lenex considers unsatisfactory.  The Erector shall assure harmonious labor relations to prevent any delay, disruption or interference to the Project, and shall prevent strikes, sympathy strikes, slowdowns, work interruptions, jurisdictional disputes other labor disputes relating to the Work.  If the Erector fails to fulfill any of

the covenants set forth in this paragraph, the Erector will be deemed to be in default of this Agreement.

2.4     Taxes.  The Erector shall pay all sales, consumer, use and other similar taxes for its Work.

2.5     Permits, Fees and Notices.  Unless otherwise provided in the Subcontract Documents, the Erector shall secure and pay for all its required and governmental fees, licenses and inspections necessary for the proper execution and completion of its Work.  The Erector shall give all notices and comply with all laws, ordinances, rules and regulations and lawful orders of any public authority bearing on the performance of its Work.  If the Erector performs any Work knowing it to be contrary to such laws, ordinances, rules or regulations, the Erector shall assume full responsibility therefore and shall bear all costs attributable thereto.

2.6     Submittals.  The Erector shall prepare, review, approve and submit to Lenex in a timely manner all information requested by Lenex for its Shop Drawings and cooperate with Lenex in the preparation of the Shop Drawings.   The Erector shall cooperate with the Architect and all inspection or testing agencies on the Project.

2.7     Warranty.  In addition to  the Erector's  obligations to correct defective or non-conforming Work provided by law or as set forth in the Subcontract Documents, the Erector agrees immediately to repair, restore, correct and cure, at the Erector's expense, all defects and omissions in workmanship and materials and all failures to comply with the Subcontract Documents which appear within one (1) year from the date of final completion and acceptance of the Work by the Owner, or for such longer period as is required by the Prime Contract.  This warranty shall not shorten any longer warranty or liability period provided for by law or in the Subcontract Documents nor supersede the terms of any special warranty given by the Erector, but shall be in addition thereto. The Erector shall defend and indemnify Lenex against any and all claims, losses, costs, damages and expenses, including attorneys' fees, incurred by Lenex as a result of the Erector's Work.

2.7.1     The commencement and terms for all warranties required by the Subcontract Documents shall not be affected by any delay in the commencement, progress or completion of the Work, regardless of the cause therefor.  Neither the acceptance of the Work nor any payment shall constitute a waiver of any claims against the Erector for defects in the Work.

2.7.2     The foregoing warranties shall not affect, limit or impair Lenex's right against the Erector with regard to latent defects in the Work which do not appear within the applicable warranty period.

2.7.3     Upon completion of the Work, and as a condition precedent to Final Payment, the Erector shall furnish Lenex with an executed original copy of the Subcontractor Guarantee attached hereto as Exhibit B (which shall supplement but not limit the terms of paragraph 2.7 of this Agreement), and copies of all warranties, guarantees, and operating manuals relative to equipment installed, and a complete set of reproducible drawings with all field changes noted on them relating to the improvements constructed under the Subcontract Documents.

2.7.4     If requested by Lenex, and as a condition precedent to Final Payment, the Erector shall deliver to Lenex a signed affidavit stating that, to the best of the Erector's knowledge and belief, the Work has been constructed in accordance with the Subcontract Documents.

2.8     Site Access.  The Erector shall keep roads, walks, ramps, and other areas on and adjacent to the Project free from obstructions which might present a hazard to or interfere with traffic.  The Erector shall confine operations at the Site to areas permitted by law, ordinances, permits and the Subcontract Documents, and shall not unreasonably encumber the Site with any materials or equipment.

2.9    Cutting and Patching.  The Erector shall leave and do all cutting, fitting or patching of its Work that may be required to make its several parts fit together properly or to receive or be received by the Work of other subcontractors.  All cutting of structural members shall be performed by the subcontractor responsible for the involved structural work, subject to the review and approval of the structural engineer.  The Erector shall not damage or endanger any portion of the Work or the work of the Owner or other subcontractors by cutting, patching or otherwise altering any Work.

2.10    Cleaning Up.  The Erector shall at all times keep the premises free from the accumulation of waste materials or rubbish caused by the Erector's operations.  The Erector is responsible for its own daily cleanup.  If the Erector fails to clean up, Lenex may do so and the cost thereof shall be charged to the Erector.

2.11    Indemnification.  To the fullest extend permitted by law, the Erector shall defend and indemnify Lenex, its engineers and consultants, the Contractor, the Owner and the Architect, their agents and employees (collectively "Indemnitees"), from and against all claims, damages and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work, including but not limited to claims, damages and expenses attributable to bodily injury, sickness, disease or death, injury to or destruction of tangible property, and claims for interference, disruption, delay or other loss, even if caused by an act or omission of an Indemnitee.  This indemnification shall not be construed to indemnify any Indemnitee from its sole negligence.  To the extent any party indemnified hereunder is solely negligent, or engages in willful misconduct, this provision shall not apply to such party, but it shall continue to be effective as to all other Indemnitees not so negligent and who have not engaged in willful misconduct.  The indemnification obligation under this paragraph shall not be limited by the amount of type of damages, compensation or benefits payable by or for the Erector under workers' compensation ~~does not~~ acts, disability benefit acts or other employee benefit acts. ~~Also Erectors specifically~~ *does not* *waives its rights to protection as provided by the Kotecki decision.* CAS 8/19/08

STRICKEN PER
RALG SHELTON EMAIL 8/29/08
2.12    Bonds.  The Erector shall furnish a Performance Bond and Labor and Material Payment Bond meeting all statutory requirements of the state in which the Project is located and complying with the following requirements: (.1) The form of such bonds shall be as required by Lenex; (.2) The Bonds shall be executed by a responsible surety licensed in the state in which the Project is located and approved by Lenex and shall remain in effect for a period not less than one (1) year following the date of Substantial Completion and/or the time required to resolve any items of incomplete Work and the payment of any owed amounts, whichever time period extends the longer; (.3) The amount of the Performance Bond and the Labor and Material Payment Bond shall each be 100% of the total amount payable by the terms of this Subcontract; and (.4) The Erector shall require the attorney in fact who executes the required bonds on behalf of the surety to affix thereto a certified and current copy of his power of attorney indicating the monetary limit of such power.

*Not Required at 9/19/08 ok gs*

2.13    Temporary Facilities and Services.  All temporary construction facilities and services required for the Work shall be provided by the Erector unless specifically assigned to another party in Division 1 of the Specifications, including power for erection, services, drinking water, hoisting, scaffolding, temporary protection of the in-place work, trash removal, and clean-up.  Erection only.

### ARTICLE 3
### SUBCONTRACT TIME

3.1    Project Schedule.  The timing of all Work and material deliveries and installation shall conform to the Project Schedule.  Within five (5) days of the execution of this Agreement, the Erector shall prepare a detailed schedule within the constraints of the Project Schedule, including the stated Substantial Completion date and milestone dates, if any.  The Erector's schedule shall include a detailed breakdown of the planned duration, start date and completion date for each activity and estimated dates for delivery of submittals, materials and equipment. Lenex shall have the right to modify the Project Schedule to vary the sequence or suspend, delay, or accelerate the commencement or execution of any or all of the Erector's Work.  The term "day" as used in the Subcontract Documents shall mean calendar day unless specifically designated otherwise.  Time is of the essence of this Agreement.

3.2    Overtime.    If ordered in writing by Lenex, the Erector shall work overtime. If the overtime work is required due to the Erector's delay, no additional compensation shall be paid. If the overtime work is required due to the delay of others, the Erector shall be compensated for its net increased labor costs only.

3.3    Delay Caused by Erector.    If the Work or the Project is delayed, disrupted or interfered with by any act or failure to act of the Erector, the Erector shall compensate Lenex for and indemnify Lenex against all such costs, expenses, damages and liabilities, including attorneys' fees, resulting therefrom. Liquidated damages, if provided for elsewhere in the Subcontract Documents, shall be assessed against the Erector in addition to such actual damages to the extent caused by the Erector or any person or entity for whom the Erector is responsible.

3.4    Delay to Erector's Work.    If the Work of the Erector on the Project's critical path is critically delayed, disrupted or interfered with at any time in the progress of the Work by any act or neglect of the Contractor, the Owner, the Architect or Lenex or by changes ordered in the Work, fire, unavoidable casualties, or any other cause beyond the Erector's control (except as otherwise provided in the Subcontract Documents), the Subcontract Time shall be extended by Change Order for such reasonable time as Lenex may determine.

> 3.4.1    The Erector shall have no claim against the Owner, Lenex, the Contractor, or the Architect for an increase in the Subcontract Sum or for a payment of any kind for damage, loss or expense resulting therefrom, including any claim for constructive acceleration, except for acts constituting intentional or grossly unreasonable interference by the Owner, the Contractor, Lenex or the Architect. Lenex's exercise of any of its rights under the Subcontract Documents, including but not limited to its rights regarding changes in the Work, regardless of the extent or number of such changes, directing overtime or changes in the sequence of the Work, withholding payment or otherwise exercising its rights hereunder, shall not be construed as intentional interference with the Erector's performance of the Work. The Erector shall bear all costs, expenses and liabilities which it may incur in connection with any such delay, disruption or interference, and all costs, expenses and liabilities of any nature whatsoever, whether or not provided for in the Subcontract Documents. The only remedy available to the Erector shall be an extension of time.
>
> 3.4.2    No extension of time shall be granted on account of, or resulting from, inadequate construction forces, the failure of the Erector to place orders for equipment or materials sufficiently in advance to insure their delivery when needed, or delays resulting from interruptions to or suspensions of the Erector's Work so as to enable other subcontractors to perform their work.
>
> 3.4.3    Any claim for extension of time shall be made in writing to Lenex. Erector shall notify Lenex immediately upon the occurrence of an event of delay and shall make a claim for an extension of time in writing to Lenex no later than ten (10) days after the commencement of the occurrence giving right to the claim and shall. The written claim shall include an estimate of the probable effect of such delay, disruption or interference on the progress of the Work; otherwise it shall be waived.

3.5    Work Suspension.    Lenex may, at any time and upon two (2) days' written notice to Erector suspend, delay, or interrupt the Work in whole or in part of such period of time as Lenex may determine. The Subcontract Sum and the Project Schedule shall be adjusted for increases in the cost and time caused by suspension, delay, or interruption and shall include profit and overhead in the amount of 10% of the Subcontract Sum as adjusted by change orders.

## ARTICLE 4
## PAYMENTS AND COMPLETION

4.1    Subcontract Sum.  Lenex shall pay the Erector for the performance of the Work under this Agreement, subject to additions and deductions as provided in the Subcontract Documents, the total sum of **Two Million Twenty Five Thousand Three Hundred Fifty Five Dollars and 00/100 ($2,025,355.00)**.  The Subcontract Sum may be changed only by Change Order.

4.2    Applications for Payment.  Based upon Pay Applications submitted to Lenex by the Erector, Lenex shall make progress payments on account of the Subcontract Sum to the Erector based on the percentage of completion of the Work and as provided below and elsewhere in the Subcontract Documents.  The period covered by each Pay Application shall be one calendar month ending on the last day of the month.  Provided a Pay Application and all supporting documents required are received by Lenex the 20th of the month, Lenex shall include the Erector's Work covered by that Pay Application in the next application for payment that Lenex is entitled to submit to the Owner or the Contractor.  Any detailed or supplemental information required by Lenex shall be supplied by the Erector.  Each Pay Application shall be accompanied by the Erector's Affidavit and Waiver of Lien.

4.3    Condition Precedent to Payment.  Receipt of a progress payment, retainage and/or final payment by Lenex from the Owner or the Contractor shall be a condition precedent to the right of the Erector to receive such payment from Lenex, unless the failure to receive such payment shall be solely caused by the fault of Lenex.

4.4    Progress Payments.  Subject to the other provisions of the Subcontract Documents, the amount of each progress payment shall be based on the percentage of the Work completed as of the last day of the month for which the Pay Application has been submitted, minus retainage.  Lenex shall pay the Erector within ten (10) days of Lenex's receipt of payment from the Owner or the Contractor.

4.5    Retainage.  Lenex shall retain from each progress payment a sum equal to **TEN** percent (**10**%) of the progress payment authorized by Lenex for payment to the Erector.

4.6    Payments by Erector .  The Erector shall promptly pay each of its subcontractors, material suppliers and equipment lessors upon receipt of payment from Lenex and shall furnish satisfactory evidence, including (as a condition precedent to payment) releases and lien waivers on forms provided by Lenex, to verify compliance with this requirement.

4.7    Payment Withholding.  Lenex may withhold payment from the Erector to such extent as may be necessary, in Lenex's opinion, to protect from loss because of:

    .1    defective or non-conforming Work;

    .2    third party claims filed or any evidence indicating the probable filing of such claims;

    .3    failure of the Erector to make payments properly to its subcontractors, or for labor, materials or equipment;

    .4    evidence that the Work may not be completed for the unpaid balance of the Subcontract Sum;

    .5    damage to the Owner, the Contractor or Lenex;

    .6    evidence that the Work may not be completed within the Subcontract Time; or

    .7    failure to carry out the Work in accordance with the Subcontract Documents.

4.7.1  Lenex may, but shall not be obligated or required to, make direct or joint payments to or on behalf of the Erector to its subcontractors, material suppliers, equipment lessors and/or laborers and charging all such direct or joint payments against the Subcontract Sum.  Nothing contained in this paragraph shall create any liability or contractual relationship on the part of Lenex to any subcontractor, material supplier, equipment lessor or laborer.

4.7.2  If any claim or lien is made or filed with or against the Owner, the Contractor, Lenex, the Architect, the Project, the real estate, or contract proceeds by any person claiming that the Erector has failed to make payment for labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Work, or if at any time there shall be any evidence of such non-payment of any claim or lien which is chargeable to the Erector, Lenex shall also have the right to withhold an amount which Lenex deems sufficient to satisfy, discharge and/or defend against such claim or lien or any action which may be brought or judgment which may be recovered thereon, and compensate the Owner, Lenex and the Architect for and indemnify them against any and all losses, liabilities, damages, costs, and expenses, including attorney's fees, incurred by them in connection therewith.  If the amount retained is insufficient therefor, the Erector shall be liable for the difference.

4.8     Substantial Completion.  When the Erector considers the Work, or a designated portion thereof, to be substantially complete, Lenex shall prepare for the Erector a list of items to be completed or corrected.  The failure to include any items on such list does not alter the responsibility of the Erector to complete all Work in accordance with the Subcontract Documents.

4.9     Final Payment.  Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made to the Erector within thirty (30) days after:

    .1      The Work has been **substantially** completed in strict accordance with the Subcontract Documents

    .2      The Erector has furnished (1) a general release of all liens and claims and a final lien waiver on forms acceptable to Lenex, (2) the number of copies of record drawings required by the Subcontract Documents, and (3) all Operational/Instruction/Maintenance Manuals, warranties, and any other close-out documents required by the Subcontract Documents; and

    .3      Lenex has received payment from the Contractor or the Owner.  Lenex's receipt of payment from the Contractor or the Owner shall be a condition precedent to the right of the Erector to receive final payment from Lenex.

As a condition precedent to the issuance of final payment, the Erector, if required, shall submit evidence satisfactory to Lenex that all indebtedness relating to the Work has been satisfied.

4.10    Interest.  Unless otherwise provided in the Subcontract Documents, payments due to the Erector shall bear no interest and the Erector shall not be entitled to recover interest, statutory or otherwise.

## ARTICLE 5
## PROTECTION OF PERSONS AND PROPERTY

5.1     Erector Responsibility.  The Erector shall take all reasonable safety precautions with respect to its Work and shall comply with the safety requirements of Division 1 of the Specifications, other safety requirements and regulations set forth elsewhere in the Subcontract Documents, and all applicable laws, ordinances, rules, regulations and orders of public authorities having jurisdiction over the Project.  Since Lenex will not be present at the Project site, the responsibilities for steel erection have been delegated to the Erector, whose business is that of steel erection.  It is understood that if Lenex is present at the Project, it shall be present only for the purpose of evaluating the progress of the Work.  The Erector expressly agrees that it is in

ERECTOR (IN), REV. 10/19/01

charge of and in control of the Work and that it shall have sole exclusive responsibility to comply with the safety requirements of the Subcontract Documents. Neither Lenex nor the Contractor is in charge of the Work or in control of the execution of the Work. The obligations of the Erector shall be construed to include but not be limited to injury or damage because the Erector, its agents, and employees failed to use or misused any scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance erected or constructed by any person, or any or all other kinds of equipment, whether or not owned or furnished by the Erector. The Erector expressly agrees that it is exclusively responsible for compliance with OSHA and local regulations for construction and that it is the "employer" within the meaning of those regulations. Any provision in the Subcontract Documents in conflict with this paragraph shall be null and void. It is the express intent of the parties that this provision be given broad and liberal construction to effectuate the intent of the parties that the Erector, and not Lenex or the Contractor, is in charge of the Work.

5.2    Safety Representative. Before commencing Work, the Erector shall designate a competent person(s) who shall be responsible for the implementation of the safety requirements of this Agreement, and who shall cooperate with the other subcontractors to the extent necessary to insure Project safety. A safety representative or an insurer may, from time to time, conduct safety inspections and submit safety findings. The Erector shall, at its expense, implement any abatement procedures recommended by such safety representative.

5.3    Notices. The Erector shall give all notices and comply with all applicable laws, ordinances, rules, regulations and lawful orders of OSHA and any public authority bearing on the safety of persons or property or protection from damage, injury or loss. If the Erector fails to give such notices or fails to comply with such laws, ordinances, rules, regulations, and lawful orders, it shall be liable for and shall defend, indemnify and hold harmless Lenex, its engineers and consultants, the Contractor, the Owner and the Architect and their respective employees, officers, and agents, against any resulting fines, penalties, judgments, or damages, including reasonable attorneys' fees, imposed on or incurred by the parties indemnified hereunder.

## ARTICLE 6
## INSURANCE

6.1    Generally. The Erector shall purchase and maintain insurance for protection from the claims set forth in this Article which may arise out of or result from the Erector's operations or its Work under the Subcontract Documents: (1) claims under worker's compensation, disability benefits and other similar employee benefit acts; (2) claims of bodily injury, occupational sickness or disease, or death; (3) claims for damages insured by usual personal injury liability coverage which are sustained by any person as a result of an act or omission to act directly or indirectly related to the employment of such person by the Erector; (4) claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom; and (5) claims for damages because of bodily injury or death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle.

6.2    Evidence of Insurance and Additional Insured Provision. Certificates of Insurance acceptable to Lenex [Acord 25 (8/84 only) form] and Additional Insured Endorsement as required hereunder shall be submitted by the Erector to Lenex prior to commencement of the Work. These Certificates shall state the name and location of the Project, contain a provision that coverage afforded under the policies will not be canceled until at least thirty (30) days' prior written notice has been given to Lenex, and shall be endorsed to provide an Additional Insured Endorsement (in form acceptable to CO.) to name Lenex, its engineers and consultants, architect, contractor, owner and any other persons or entities as required by the Subcontract Documents, as additional insureds, and amended to provide Primary, Non-Contributory Coverages, for all claims and losses against Lenex, its engineers and consultants, architect, contractor and owner including but not limited to those claims that arise out of injuries to the employees of the Erector or injuries to third parties which occur during the performance of this Agreement, or as a result of the Erector's performance. Any coverage provided by Lenex, its engineers and consultants, architect, contractor and owner shall be excess coverage. **In the event of contributory negligence on the part of an indemnified party, subcontractor's indemnity shall be proportional.**

6.3    Coverage and Limits. The Erector shall purchase and maintain the insurance as required in this Article from companies licensed to do business in the state in which the Work is

located. Upon request, the Erector shall allow Lenex to examine the actual policies, but Lenex shall have no obligation to do so. The Erector shall furnish insurance in the following categories and for the stated minimum amounts:

| | |
|---|---|
| Workers' Compensation, including "Other States" coverage | - Statutory |
| Employer's Liability, including "Other States" coverage | - Not less than $ 1,000,000 |
| Comprehensive General Liability, including Independent Contractors' and Owners' Protective, Broad Form Contractual, Personal Injury, Completed Operations and Products coverages (such Completed Operations and Products shall be provided for a period of two (2) years after final completion and final acceptance of the Work by the Owner), and deletion of any exclusion pertaining to explosion, collapse and underground property damage hazards, with Aggregate-Per Project Endorsement (CG2503). | - Not less than $ 3,000,000 combined single limited for bodily injury and property damage. |
| Comprehensive Automobile Liability, including Owned, Non-owned and for property damage, with Hired Car coverages. | - Not less than $ 1,000,000 combined single limit for both bodily injury and property damage |

6.4     If the Erector makes a claim covered by the Builder's Risk or property insurance policy maintained in connection with the Project, the Erector shall be responsible for, and shall permit the proceeds of its claim to be reduced by, the amount of the deductible required under the Builder's Risk or property insurance policy irrespective of the cause or nature of the occurrence giving rise to the claim.

6.4.1     The Erector shall provide property and equipment insurance for the full value of all materials and equipment stored off-site or in transit, unless Lenex issues a specific written waiver of this requirement. The Erector waives all claims and all rights of subrogation against Lenex and the Owner for loss of, or damage to, the Erector's tools, machinery, equipment, materials, and supplies.

6.4.2     Lenex and the Erector waive all rights against (1) each other and any of their subcontractors, agents and employees, and (2) the Owner, separate contractors, and any of their subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by Builder's Risk or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance.

## ARTICLE 7
## CHANGES IN THE WORK

7.1     Change Orders. A Change Order is a written order by Lenex to the Erector issued after execution of this Agreement, authorizing a change in the Work or an adjustment in the Subcontract Sum or the Subcontract Time. The Subcontract Sum and the Subcontract Time shall be changed only by Change Order. A Change Order signed by the Erector exclusively establishes the Erector's agreement therewith.

7.1.1 Lenex may order changes in the Work within the general scope of the Work consisting of additions, deletions or other revisions. All such changes in the Work shall be authorized by Change Order and shall be performed under the applicable conditions of the Subcontract Documents.

7.1.2 The cost or credit to Lenex resulting from a change in the Work shall be determined in one or more of the following ways: (1) by mutual agreement of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation; (2) by unit prices stated in the Subcontract Documents or subsequently agreed upon; or (3) by cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee.

7.1.3 If additional Work is performed on a "Time and Material" basis, the Erector shall submit to Lenex an extra work order at the end of each day worked for approval of charges for that day. Failure to submit daily work orders shall be cause for Lenex to reject payment for the "Time and Material" work.

7.1.4 If none of the methods set forth in Subparagraph 7.1.2 or 7.1.3 are agreed upon, the Erector, provided a written order signed by Lenex is received, shall promptly proceed with the Work involved. The cost of such Work shall then be determined by Lenex on the basis of the reasonable expenditures and savings of those performing the Work attributable to the change. The Erector shall keep and present, in such form as Lenex may prescribe, an itemized accounting together with appropriate supporting data for inclusion in a Change Order. Unless otherwise provided in the Subcontract Documents, "cost" shall be limited to the cost of materials, including sales tax and cost of delivery; cost of labor, including social security, old age and unemployment insurance, and fringe benefits required by agreement or custom; worker's compensation insurance; bond premiums; rental value of equipment and machinery; and additional costs of supervision and field office personnel directly attributable to the change.

7.2     Concealed Conditions.  Should concealed, unknown subsurface conditions be encountered in the performance of the Work and such conditions either (1) differ materially from the conditions indicated by the Subcontract Documents, or (2) are of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in Work, the Subcontract Sum shall be equitably adjusted by Change Order upon written claim by the Erector, if made within ten (10) days after the first observance of the conditions. However, surveys and other documents describing the physical characteristics, legal limitations or utility locations for the Project site are for informational purposes only and Lenex shall not be liable for inaccuracies or omissions therein, nor shall any inaccuracies or omissions in such items relieve the Erector of its responsibility to perform the Work in accordance with the Subcontract Documents.

## ARTICLE 8
## CORRECTION OF WORK

8.1     Uncovering of Work.  If any portion of the Work should be covered contrary to the request of the Contractor, the Architect or Lenex, or contrary to any requirements expressed in the Subcontract Documents, it must, if required in writing, be uncovered for observation and shall be replaced at the Erector's expense.  If any other portion of the Work has been covered which the Contractor, the Architect or Lenex has not specifically requested to observe prior to it being covered, either may request to see such Work and it shall be uncovered by the Erector.  If such Work is in accordance with the Subcontract Documents, the cost of uncovering and replacement shall, by appropriate Change Order, be reimbursed to the Erector.  If such Work is not in accordance with the Subcontract Documents, the Erector shall pay such costs.

8.2     Correction of Work.  The Erector shall promptly correct all of the Erector's Work rejected by Lenex as defective or as failing to conform to the Subcontract Documents whether observed before or after Substantial Completion and whether or not fabricated, installed or completed.  The Erector shall bear all costs of correcting such rejected Work. If the Erector fails to correct non-conforming Work or neglects to carry out the Work in accordance with the Subcontract Documents, and fails within seventy-two (72) hours after receipt of written notice from Lenex to commence and continue correction of such failure or neglect with diligence and promptness, Lenex may, without prejudice to any other remedy Lenex may have, make good such deficiencies.  In such case, the cost thereof shall be deducted from the Subcontract Sum.  If the

payments then or thereafter due the Erector are not sufficient to cover such amount, the Erector shall pay the difference to Lenex.

## ARTICLE 9
## DISPUTE RESOLUTION

9.1 Claims. The Erector shall make all claims for an increase in the Subcontract Sum or the Subcontract Time in accordance with the Subcontract Documents and in strict compliance with the procedures provided below. If the Erector claims that it is entitled to additional sums or time, for any reason whatsoever, it must notify Lenex and request the issuance of a Change Order no later than ten (10) days from the date of the act, omission or event giving rise to the claim; otherwise, the claim shall be waived. No additional sums shall be paid to the Erector, and no additional time shall be granted or recognized, unless the Erector has received a written Change Order signed by Lenex. VERBAL CHANGES OR EXTRAS SHALL NOT BE VALID OR ENFORCEABLE.

9.2 Disputes Involving the Contractor or Owner. A claim which will affect or become part of a claim which Lenex will or may make against the Contractor or the Owner shall be submitted by the Erector in sufficient time to permit Lenex to make the claim against the Contractor or the Owner in a timely manner. Failure of the Erector to make such timely claim shall bind the Erector to the same consequences as those to which Lenex is bound. If Lenex asserts or defends a claim against the Contractor or the Owner which relates to the Work of the Erector, the Erector shall make available to Lenex all requested documentation and information relating to that portion of the claim and the Erector shall be bound by the outcome of the dispute resolution procedure between the Owner or the Contractor and Lenex. The Erector shall reimburse Lenex for all costs and expenses, including attorney's fees, incurred by Lenex in defending a claim by, or prosecuting a claim against, the Contractor or the Owner or any other party if such claim relates to or arises from the Erector's Work. Lenex shall pay the Erector a proportionate share of any recovery received from the Contractor or the Owner on the basis of the ratio of the Subcontractor's claims to other claims that are asserted, less Lenex's costs, expenses and attorney's fees. Likewise, the Erector shall indemnify Lenex against, and reimburse Lenex for, a proportionate share of any recovery by the Contractor or the Owner involving the Erector's Work, plus Lenex's costs, expenses and attorney's fees.

9.3 Mediation. If required by Lenex, the parties shall attempt to resolve their disputes by mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. A request for mediation shall be filed in writing with the other party and the American Arbitration Association. If requested by Lenex, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a minimum period of 60 days. The parties shall share the mediator's fee and expenses equally. The mediation shall be held at or near the Project site. Agreements reached in mediation shall be in writing and shall be enforceable as settlement agreements in any court having jurisdiction.

9.4 Arbitration. All claims, disputes, and other matters in question between the Erector and Lenex arising out of or related to this Agreement or the breach thereof, except for claims that have been waived by the making and acceptance of final payment, may be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect at the sole option of Lenex. If a demand for arbitration is filed by the Erector, Lenex will advise the Erector within 30 days after the receipt of such demand for arbitration if Lenex exercises the option to arbitrate or rejects arbitration; such election, once made, shall be binding. The filing of a demand for arbitration by Lenex shall be deemed an election to arbitrate and shall constitute the exercise of the option of Lenex to proceed with arbitration. Lenex may join or consolidate arbitration with the Owner, the Architect, any other subcontractor, or any other party having an interest in the proceeding. The Erector hereby consents to such joinder or consolidation, which may be ordered at the sole discretion and election of Lenex. This agreement to arbitrate shall be specifically enforceable under applicable law in any court having jurisdiction thereof. Any award rendered by arbitration shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. In the event of any litigation or arbitration between Lenex and the Erector, the Erector shall reimburse Lenex for its attorney's fees unless the Erector is determined to be the prevailing party in the arbitration or litigation.

9.5    Continued Performance.  The Erector shall continue performance of the Work, if directed by Lenex, in the event of a dispute; the existence of a dispute shall not justify delay or suspension of the Work by the Erector.  Failure to so proceed shall constitute a material breach of this Agreement by the Erector, regardless of the ultimate outcome of the dispute.

## ARTICLE 10
## DEFAULT AND REMEDIES

10.1    Events of Default.  The following shall be events of default under this Subcontract: (1) the refusal, neglect or failure of the Erector to supply sufficient amounts of labor, equipment or materials of proper quality and quantity; (2) the failure of the Erector to maintain the Progress Schedule, or the stoppage, delay or disruption of or the interference to the work of Lenex or other subcontractors by reason of the Erector; (3) the failure of the Erector to perform or comply with any clause or covenant contained in the Subcontract Documents; (4) the existence of evidence satisfactory to Lenex that the Erector is financially incompetent or otherwise unable or unwilling to satisfactorily perform the Work under the Subcontract Documents; (5) the filing by or against the Erector of a petition in bankruptcy or a petition for any arrangement or reorganization under any Bankruptcy Act; (6) the insolvency of the Erector, including inability to meet current obligations; (7) dissolution or termination of the existence of the Erector; (8) the calling of a meeting of creditors of the Erector, the appointment of a committee of creditors or liquidating agents or the offering of a composition or extension to creditors by the Erector; (9) the appointment of a receiver for the Erector; and/or (10) the inability of the Erector to perform the Work or maintain labor peace on the Project site for any reason, including but not limited to any labor dispute or strike or other difficulty involving any union of the employees of the Erector, or any of its' subcontractors or material suppliers.

10.2    Lenex's Remedies.  Upon any event of default by the Erector, Lenex may, after seventy-two (72) hours written notice to the Erector, without liability therefor and without prejudice to any other right or remedy available to Lenex:

.1    Provide itself or through others all or any portion of labor, materials, equipment and other things, including overtime work, and do any other thing which the Erector is failing to provide or do in accordance with its obligations hereunder, and all costs and expenses incurred by Lenex in so doing shall be an indebtedness owing from the Erector to Lenex and payable on demand.

.2    Terminate the Erector and take possession of the Work and of all materials, and take over and finish the Work by whatever method Lenex may deem expedient for the account.

.3    Whether or not Lenex exercises its rights under .1 or .2 above, Lenex may withhold any payments of any kind whatsoever becoming otherwise due the Erector until any failure of performance or default under the provisions of the Subcontract Documents has been wholly remedied (or, if Lenex shall exercise its right of termination pursuant to .2 above, until the Work has been wholly completed) at which time there shall be due to the Erector only the balance of any of the Subcontract Sum which remains after deducting all sums payable, and a reasonable reserve for any sums which may become payable to Lenex by the Erector  on account of such violation, failure of performance or default, or otherwise under any of the terms of the Subcontract Documents.  If such expenses of Lenex shall exceed such unpaid balance due the Erector, the Erector shall pay the difference to Lenex.  If the Erector fails or refuses to pay said difference, the Erector shall pay all the reasonable costs and expenses to Lenex of collecting the amount due, including but not limited to attorneys' fees. The taking over of the Work by Lenex, as provided in this Article, shall not relieve the Erector or the Erector's sureties of liability for damages resulting from delay, disruption or interference, whether such damages be liquidated or unliquidated.

10.3 <u>For Convenience.</u> Lenex may, at any time, terminate this Agreement for its convenience. Upon receipt of written notice of termination, the Erector shall cease operations as directed by Lenex in the notice, take actions necessary, or as Lenex may direct, for the protection and preservation of the Work, and terminate all existing subcontracts and purchase orders. Provided the Erector is not in Default, the Erector shall receive, as full compensation, its actual, necessary, and reasonable costs of performing the Work to date of termination, plus a reasonable markup for overhead and profit on Work performed. The Erector shall make its records available for Lenex's review. In the event any termination of the Erector for Default is later determined to have been improper, the termination shall automatically convert to a termination for convenience, and the Erector shall be limited in its recovery strictly to the compensation provided for in this paragraph.

10.4 <u>Assignment.</u> Lenex may assign this Agreement to the Contractor or the Owner, subject to the prior rights of sureties, if any. In such event, the Contractor or the Owner shall assume Lenex's rights and obligations under this Agreement.

This Agreement is entered into as of the date and year first written above.

**LENEX STEEL COMPANY**

By: _Michael R. Berghoff_
      (Signature)

Mr. Michael R. Berghoff
      (Printed Name)

President
      (Title)

Erector: AREA ERECTORS, INC.

By: _____
      (Signature)

CRAIG A. SHELTON
      (Printed Name)

PRESIDENT
      (Title)

**EXHIBIT A**
**(Plans/Drawings)**

**Drawings as issued in bid package to include Addendums 1 and 2**

C:\OFFICE\WPWIN\WPDOCS\SUBCON\REVISE-2\NEREC-1.WPD

  **ERECTORS, INC.** 

Date: December 6th, 2010

**Certified Mail, Return Receipt Requested**

Caddell Construction Co., Inc.
P.O. Box 210099 (36121)
2700 Lagoon Park Drive
Montgomery, AL 36109

> **Re:** **New United States Courthouse - Rockford, IL**
> **Prime Contractor: Caddell Construction Co., Inc.**
> **Subcontractor: Lenex Steel Company**
> **Second Tier Subcontractor/Claimant: Area Erectors, Inc.**
> **Lenex Steel Company Job No. 462-08**
> **Claim Amount: $401,278.25**

To Whom It May Concern:

    You are hereby notified that Area Erectors, Inc., 2323 Harrison Avenue, Rockford, Illinois 61104, has furnished labor and materials to Lenex Steel Company for the purpose of installing and erecting structural steel in the construction of the public improvement designated as New United States Courthouse - Rockford, Illinois.

    You are further notified that the amount of $401,278.25 is presently due to Area Erectors, Inc., from Lenex Steel Company for the labor and materials provided by Area Erectors, Inc., on the above named construction project.

    You are further notified that this Notice is hereby given pursuant to the provisions of the Miller Act in order to protect Area Erectors, Inc.'s rights under the payment bond furnished on this project.

    Thank you for your attention to this matter.

                    Sincerely,

                    *Brian Peck*

                    Brian Peck
                    Controller, Area Erectors, Inc.

| Home Office | Peoria Office | Chicago Office | Rochelle Precast Office | Milwaukee Office | Oswego Office |
|---|---|---|---|---|---|
| 2323 Harrison Ave | 900 W Adams | 404 Mercantile Court | 1221 South Seventh St | W22B S6955 Enterprise Dr. | |
| Rockford IL 61104 | Peoria IL 61602 | Wheeling, IL 60090 | Rochelle, IL 61068 | Big Bend, WI 53103 | |
| Phone | Phone | Phone | Phone | Phone | |
| 815 398 6700 | 309 676 2732 | 847 459 8022 | 815 562 4000 | 262 662 1040 | |
| Fax 815 398 6787 | Fax 309 676 2799 | Fax 847 459 9057 | Fax 815 562 5713 | Fax 262 662 1050 | |



**EXHIBIT**

**C**

Cc:   Lenex Steel Company Inc.
      Attn: Mr. Michael R. Berghoff
      250 E. 96th Street
      Indianapolis, IN 46240

      U.S. General Services Administration
      Attn: Ms. Juanita Vazquez
      230 S. Dearborn Street, Suite 3600
      Chicago, IL 60604

      Koetter Kim & Associates, Inc.
      356 Boylston Street
      Boston, MA 02116

      PSA-Dewberry Inc.
      401 SW Water Street, Suite 701
      Peoria, IL 61602

      Travelers Casualty and Surety Company of America
      One Tower Square
      Hartford, CT 06183

      Fidelity and Deposit Company of Maryland
      1400 American Lane, Tower 1, 19th Floor
      Schaumburg, IL 60196

      Zurich American Insurance Company
      1400 American Lane, Tower 1, 19th Floor
      Schaumburg, IL 60196

| Home Office | Peoria Office | Chicago Office | Rochelle Precast Office | Milwaukee Office | Oswego Office |
|---|---|---|---|---|---|
| 2323 Harrison Ave | 900 W Adams | 404 Mercantile Court | 1221 South Seventh St | W228 S6955 Enterprise Dr. | 71 Stonehill Rd. Ste A |
| Rockford IL 61104 | Peoria IL 61602 | Wheeling, IL 60090 | Rochelle, IL 61068 | Big Bend, WI 53103 | Oswego, IL 60543 |
| Phone | Phone | Phone | Phone | Phone | Phone |
| 815 398 6700 | 309 676 2732 | 847 459 8022 | 815 562 4000 | 262 662 1040 | 630 554 4377 |
| Fax 815 398 6787 | Fax 309 676 2799 | Fax 847 459 9057 | Fax 815 562 5713 | Fax 262 662 1050 | Fax 630 554 2310 |

## AFFIDAVIT OF SPECIAL PROCESS SERVER

RECEIVED DEC 1 6 2010

**Justin Turner**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

( ) Summons & Complaint
( ) Citation to Discover Assets
( ) Rule to Show Cause
( ) Subpoena
( X ) Other: **Letter dated December 6, 2010**

1.    ( ) By leaving a copy with the named party, ------- personally on -------.
.....................................................................................

2.    ( ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.
.....................................................................................

3.    ( X ) On the within party, **Caddell Construction Co., Inc. c/o CT Corporation System** by leaving a copy with **Lourdes Vina, Corporate Operations Specialist and Authorized Person**, on **December 9, 2010**, and informed that person of the contents thereof.
.....................................................................................

4.    ( X ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Female**      RACE: **Caucasian**      APPROXIMATE AGE: **30**
.....................................................................................

5.    ( X ) That the place where and the time of day when the documents were served were as follows:

PLACE: **208 S. LaSalle St., #814, Chicago, IL 60604**
TIME OF DAY: **11:36 AM**
.....................................................................................

6.    ( ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **9**th day of **December 2010**.

_____
Justin Turner
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

OFFICIAL SEAL
FELICIA CONROY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/19/11